# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

JOHN OSBORNE, BRIAN COLEMAN, EVE
COLEMAN, HELEN MILLHOUSE, and
MATTHEW D. BROWN, as participants in and
on behalf of the Kraft Heinz Savings Plan, and on
behalf of all others similarly situated,

        Plaintiffs,

      v.

EMPLOYEE BENEFITS ADMINISTRATION
BOARD OF KRAFT HEINZ, BERNARDO
HEES, PAULO BASILIO, DAVID KNOPF,
ANDREW STONER, RISHI NATARAJAN,
YANG XU, JAMES LIU, GREG GUIDOTTI,
CHRISTOPHER SKINGER, and VINCE
GARLATI,

        Defendants.

Case No. 1:20-cv-02256

Honorable Robert M. Dow, Jr.

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................... 1

BACKGROUND ................................................................................................................ 4

    A. The Kraft Heinz Savings Plan ............................................................................ 4

    B. Defendants and their roles with respect to the Plan ........................................... 5

    C. Plaintiffs and their claims .................................................................................. 5

ARGUMENT ..................................................................................................................... 7

I.    Count I Fails to State a Claim for Breach of Fiduciary Duty under ERISA against
    the EBAB Defendants. ............................................................................................. 7

    A. Plaintiffs have failed to plausibly allege that a prudent fiduciary in the EBAB
        Defendants' position could not have concluded that earlier disclosure would
        do more harm than good. ..................................................................................... 9

    B. Plaintiffs have also failed to plausibly allege that Defendants actually possessed
        the alleged inside information prior to the February 2019 disclosure. ................. 13

    C. Plaintiffs' claim that ERISA required the EBAB Defendants to make disclosures
        that were not required by the securities laws conflicts with the objectives of
        those laws. ......................................................................................................... 15

    D. Plaintiffs' claim also fails because ERISA's fiduciary duties apply only when a
        fiduciary acts in his fiduciary capacity, not when he acts in his corporate
        capacity. ............................................................................................................ 19

II.    Plaintiffs have failed to state a claim for breach of the duty to monitor (Count II) .......... 22

CONCLUSION ................................................................................................................... 23

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amgen Inc. v. Harris,*
136 S. Ct. 758 (2016) ........................................................................................1, 9

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...........................................................................7, 12, 14, 15

*Bateman Eichler, Hill Richards, Inc. v. Berner,*
472 U.S. 299 (1985) .................................................................................................16

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ...................................................................................................7

*Brosted v. Unum Life Ins. Co. of Am.,*
421 F.3d 459 (7th Cir. 2005) ...............................................................................18

*In re Burlington Coat Factory Sec. Litig.,*
114 F.3d 1410 (3d Cir. 1997) (Alito, J.) ...........................................................17

*In re Calpine Corp. ERISA Litig.,*
No. 03-1685, 2005 WL 1431506 (N.D. Cal. Mar. 31, 2005) ................................23

*Catalfamo v. Sears Holding Corp.,*
No. 17-5230, 2018 WL 10560956 (N.D. Ill. Aug. 21, 2018) ................................23

*Chiarella v. United States,*
445 U.S. 222 (1980) ...........................................................................................17, 18

*Coulter v. Morgan Stanley & Co., Inc.,*
753 F.3d 361 (2d Cir. 2014) .................................................................................19

*Fifth Third Bancorp v. Dudenhoeffer,*
573 U.S. 409 (2014) ..................................................................................... passim

*Flamm v. Eberstadt,*
814 F.2d 1169 (7th Cir. 1987) .............................................................................17

*Gearren v. McGraw-Hill Cos., Inc.,*
690 F. Supp. 2d 254 (S.D.N.Y. 2010), *aff'd sub nom. Slaymon v. SLM Corp.,*
506 F. App'x 61 (2d Cir. 2012) ..........................................................................21

*Graham v. Fearon,*
No. 16-2366, 2017 WL 1113358 (N.D. Ohio Mar. 24, 2017), *aff'd*, 721 F.
App'x 429 (6th Cir. 2018) ...........................................................10, 12, 13

*Houssain v. Chenault,*
No. 15-08184 (S.D.N.Y. Sept. 28, 2017) (ORDER)............................................3, 14

*Howell v. Motorola, Inc.,*
633 F.3d 552 (7th Cir. 2011) ........................................................16, 19

*Jander v. Ret. Plans Comm. of IBM,*
No. 17-3518, 2020 WL 3412115 (2d Cir. June 22, 2020)............................9, 16, 19

*Jander v. Retirement Plans Committee of IBM,*
910 F.3d 620 (2d Cir. 2018)........................................................9, 10, 12

*In re JPMorgan Chase & Co. ERISA Litig.,*
No. 12-4027, 2016 WL 110521 (S.D.N.Y. Jan. 8, 2016), *aff'd sub nom. Loeza
v. John Does 1-10*, 659 F. App'x 44 (2d Cir. 2016) ............................................10

*Kirschbaum v. Reliant Energy, Inc.,*
526 F.3d 243 (5th Cir. 2008) ........................................................21

*Larson v. United Healthcare Ins. Co.,*
723 F.3d 905 (7th Cir. 2013) ........................................................19

*In re Lehman Bros. Sec. & ERISA Litig.,*
113 F. Supp. 3d 745 (S.D.N.Y. 2015), *aff'd sub nom. Rinehart v. Lehman
Bros. Holdings Inc.*, 817 F.3d 56 (2d Cir. 2016) ............................................14, 22

*Lingis v. Motorola, Inc.,*
649 F. Supp. 2d 861 (N.D. Ill. 2009), *aff'd sub nom. Howell v. Motorola, Inc.,*
633 F.3d 552 (7th Cir. 2011) ........................................................21

*Loeza v. John Does 1-10,*
659 F. App'x 44 (2d Cir. 2016) ........................................................10, 13

*Martone v. Robb,*
902 F.3d 519 (5th Cir. 2018) ........................................................10

*SEC v. Materia,*
745 F.2d 197 (2d Cir. 1984)........................................................17

*Matrixx Initiatives, Inc. v. Siracusano,*
563 U.S. 27 (2011)........................................................17

*O'Day v. Chatila,*
774 F. App'x 708 (2d Cir. 2019) ........................................................10, 12

*Pegram v. Herdrich*,
    530 U.S. 211 (2000)..................................................................................3, 20

*Perrone v. Johnson & Johnson*,
    No. 19-00923 (FLW), 2020 WL 2060324 (D.N.J. April 29, 2020)......................10, 12, 20, 22

*Priddy v. Health Care Serv. Corp.*,
    870 F.3d 657 (7th Cir. 2017) ................................................................20

*Ret. Plans Comm. of IBM v. Jander*,
    140 S. Ct. 592 (2020).......................................................................2, 9, 17, 21

*Ret. Plans Comm. of IBM v. Jander*,
    No. 18-1165, 2019 WL 3824687 (U.S. Aug. 13, 2019) ......................................16

*Rinehart v. Lehman Bros. Holdings Inc.*,
    817 F.3d 56 (2d Cir. 2016)................................................................11, 23

*Rogers v. Baxter Int'l Inc.*,
    710 F. Supp. 2d 722 (N.D. Ill. 2010) ......................................................21

*Saumer v. Cliffs Nat. Res. Inc.*,
    853 F.3d 855 (6th Cir. 2017) ............................................................11, 13

*Singh v. RadioShack Corp.*,
    882 F.3d 137 (5th Cir. 2018) ................................................................13

*In re SLM Corp. ERISA Litig.*,
    No. 08-4334, 2010 WL 3910566 (S.D.N.Y. Sept. 24, 2010 2010) ........................21

*In re Target Corp. Sec. Litig.*,
    275 F. Supp. 3d 1063 (D. Minn. 2017)................................................10

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996)..........................................................................19

*White v. Marshall & Ilsley Corp.*,
    No. 10-311, 2011 WL 2471736 (E.D. Wis. June 21, 2011), *aff'd*, 714 F.3d 980
    (7th Cir. 2013)..............................................................................23

*Whitley v. BP, P.L.C.*,
    838 F.3d 523 (5th Cir. 2016) ...................................................... passim

*Wilson v. Edison Int'l, Inc.*,
    315 F. Supp. 3d 1177 (C.D. Cal. 2018) ................................................10

*Yeftich v. Navistar, Inc.*,
    722 F.3d 911 (7th Cir. 2013) ..............................................................7

**STATUTES**

ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A)................................................................5

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A)................................................................5

ERISA § 3(34), 29 U.S.C. § 1002(34)................................................................4

ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1)................................................................7

ERISA § 404(c), 29 U.S.C. § 1104(c)................................................................4

ERISA § 407(d)(3), 29 U.S.C. § 1107(d)(3)................................................................4

## INTRODUCTION AND SUMMARY OF ARGUMENT

This employer stock drop case is yet another misguided attempt to impose liability under the Employee Retirement Income Security Act ("ERISA") on plan fiduciaries for allegedly failing to act on alleged inside corporate information to protect plan participants from market losses on employer stock held in their individual account retirement plans. While once in vogue, only one inapposite lower court ruling has allowed an ERISA stock drop case to proceed beyond a motion to dismiss since the Supreme Court unanimously established stringent pleading standards for such claims in *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014), and then confirmed those standards shortly thereafter in *Amgen Inc. v. Harris*, 136 S. Ct. 758 (2016). Plaintiffs' complaint plainly fails to satisfy the stringent *Dudenhoeffer* standard and should be dismissed consistent with the overwhelming weight of authority.

Like many employers, Kraft Heinz offers employees the option of investing in its stock through an "employee stock ownership plan" (ESOP), a retirement plan which can either stand alone, or, as here, is part of another individual account plan, such as a 401(k) plan. As the Supreme Court has explained, "Congress sought to encourage the creation of ESOPs," which promote the dual ends of securing capital for American businesses and giving workers an ownership stake in their companies. *Dudenhoeffer*, 573 U.S. at 424-25.

In February 2019, the market price of Kraft Heinz stock fell following the Company's public disclosure of certain negative financial information. FAC ¶ 2. Like many of the earlier ERISA stock drop cases, Plaintiffs brought this putative class action alleging that the Defendants – all of whom are corporate officers or hold other high-ranking positions – violated ERISA's fiduciary responsibility provisions by failing to act on the basis of alleged inside corporate information to protect participants from that stock decline. Plaintiffs assert that the market value of Kraft Heinz stock was "artificially inflated" prior to disclosure of such information and that

1

Defendants had an ERISA fiduciary obligation to cause Kraft Heinz to publicly disclose that negative information earlier and thereby "deflate" the Company's stock price to its "true" value and prevent plan participants from continuing to buy at allegedly inflated prices. FAC ¶¶ 89, 101-02. Such an earlier disclosure, of course, would not have protected plan participants from the market decline that ultimately occurred; Plaintiffs acknowledge that such disclosure would have resulted in a significant decrease in the company's stock price, and thus a decline in value of the Plan's pre-existing Kraft Heinz stock holdings. Nor do they maintain that Kraft Heinz had any obligation under the federal securities laws to disclose the alleged inside information earlier than the disclosure that was made in February 2019. Nonetheless, they assert that Defendants had an ERISA-based fiduciary disclosure duty to, in effect, correct the market value of the Company's stock without regard to the disclosure requirements of the federal securities laws.

Plaintiffs' primary claim (Count I) fails on multiple grounds. *First*, Plaintiffs' disclosure claim fails to meet the pleading requirements *Dudenhoeffer* and its progeny established for such claims. To state an actionable claim for relief, a plaintiff must "plausibly allege[] that a prudent fiduciary in the defendant's position *could not have concluded* that … publicly disclosing negative information *would do more harm than good* to the fund," and also establish that "an ERISA-based obligation … to disclose inside information to the public" does not "conflict with the complex insider trading and corporate disclosure requirements imposed by the federal securities laws or with the objectives of those laws." *Ret. Plans Comm. of IBM v. Jander*, 140 S. Ct. 592, 594 (2020) (quoting *Dudenhoeffer*, 573 U.S. at 429-30) (emphasis added). Given the Plan's pre-existing Kraft Heinz stock holdings and Plaintiffs' acknowledgement that public disclosure would have caused the value of that stock to decline, "a prudent fiduciary could very easily conclude that"[1] disclosing

---

[1] *Whitley v. BP, P.L.C.*, 838 F.3d 523, 529 (5th Cir. 2016)

the negative news earlier "would do more harm than good to the fund by causing a drop in the stock price and a concomitant drop in the value of the stock already held by the fund." *Dudenhoeffer*, 573 U.S. at 430. Thus, as virtually all complaints before it, Plaintiffs' Complaint fails the "more harm than good" prong of the *Dudenhoeffer* test.

*Second*, even if earlier disclosure theoretically could satisfy the "more harm than good" standard here (and it cannot), Plaintiffs' Complaint fails to plausibly allege that the Defendants who allegedly failed to cause that early disclosure – the Employee Benefits Administration Board ("EBAB") and its Members – actually possessed any alleged inside information before it was disclosed. Without such knowledge, the EBAB Defendants cannot be held liable for failing to disclose it, and Plaintiffs' claim fails at the threshold. *See* Order at *11-12, *Houssain v. Chenault*, No. 15-08184 (S.D.N.Y. Sept. 28, 2017) (dismissing claim where factual allegations about defendants' alleged inside information were "sparse" and "nearly non-existent").

*Third*, the ERISA-based corporate disclosure regime that Plaintiffs advocate would conflict with the objectives of the federal securities laws that govern such disclosures, as the SEC recently explained. Consequently, under *Dudenhoeffer*, Defendants face no ERISA exposure for failing to cause the disclosures at issue.

*Fourth*, ERISA regulates fiduciaries only when they act in their fiduciary capacity with respect to a plan, and not when they act in their separate corporate capacity. *See Pegram v. Herdrich*, 530 U.S. 211 (2000). Here, any inside knowledge that Defendants allegedly possessed was acquired in their capacity as corporate officers, and any decisions concerning whether to publicly disclose that information were made in a corporate capacity as well. Since they were not acting as fiduciaries in allegedly taking (or failing to take) the actions at issue, Plaintiffs' ERISA fiduciary breach claims necessarily fail.

3

*Finally*, Plaintiffs' remaining claim (Count II)—a derivative claim for failure to monitor brought against those corporate officers with responsibility for appointing members of the EBAB—fails both because Plaintiffs' underlying claim against the EBAB and its members fails and because their monitoring allegations are wholly conclusory.

## BACKGROUND

### A.    The Kraft Heinz Savings Plan

**General structure.**    This case concerns the Kraft Heinz Savings Plan (the "Plan"), a defined contribution retirement plan (also known as an individual account plan).  FAC ¶ 36.  In such plans, the benefits that participants receive are based solely on the amount of money contributed to their individual accounts, plus any earnings and less any losses or allocated expenses.  ERISA § 3(34), 29 U.S.C. § 1002(34).  The Plan gives participants control over the investment of the assets in their accounts among the various investment options under the Plan. *See* FAC ¶ 36; ERISA § 404(c), 29 U.S.C. § 1104(c).

**The Company Stock Fund.**    Kraft Heinz was formed by the 2015 merger of the H.J. Heinz Company and Kraft Foods, Inc.  FAC ¶ 45.  Its stock trades on the NASDAQ exchange in an efficient market.  FAC ¶ 13.  The investment options available to participants in the Plan include the Company Stock Fund, which allows participants to invest in Kraft Heinz stock.  FAC ¶ 36.

The inclusion of the ESOP in the Plan renders it an "eligible individual account plan" under ERISA § 407(d)(3), 29 U.S.C. § 1107(d)(3).  As a result, the Plan can hold Kraft Heinz stock under statutory exemptions that free the Plan's fiduciaries from ERISA's diversification requirement, the prudence standard to the extent that it requires diversification, and other ERISA limitations on the holding of company stock. *See Dudenhoeffer*, 573 U.S. at 416-17.

### B. Defendants and their roles with respect to the Plan

Defendants fall into two categories. The first category includes the Plan's Employee Benefits Administration Board (EBAB) and the EBAB's members during the putative class period, all of whom were Kraft Heinz officers or employees: Andrew Stoner, Rishi Natarajan, Yang Xu, James Liu, Greg Guidotti, Christopher Skinger, and Vince Garlati (collectively, the "EBAB Defendants"). FAC ¶¶ 1, 26, 30-35. The second category consists of senior corporate officers who had the authority to appoint and remove members of the EBAB during that time frame: former CEO Bernardo Hees, CFO Paulo Basilio, and former CFO David Knopf (collectively, the "Executive Defendants"). FAC ¶¶ 27-29, 41.

The EBAB is the Plan's administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A). FAC ¶ 39. It is "responsible for selecting the investment options in which participants elect to invest their Plan accounts." FAC ¶ 38. Because they are charged with the administration of the Plan and responsibility for carrying out its provisions, the EBAB Defendants are alleged to be Plan fiduciaries under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). FAC ¶¶ 26, 30-35.

### C. Plaintiffs and their claims

Plaintiffs are alleged to be participants in the Plan. FAC ¶¶ 21-25. They seek to represent a class of persons "who participated in the Plan and whose individual accounts purchased and/or held Kraft Heinz stock at any time between May 4, 2017, through February 21, 2019, and who were damaged thereby." FAC ¶ 104. Plaintiffs claim to have suffered losses after February 21, 2019, when the price of Kraft Heinz stock fell by approximately 27%. FAC ¶¶ 5, 75. Plaintiffs attribute the fall to the public disclosure of the following information made by Kraft Heinz on that date: (i) a $15.4 billion impairment of goodwill and other intangible assets to account for the declining market share of certain Kraft Heinz brands; (ii) a $25 million increase to the costs of

products sold taken after an internal investigation that followed an SEC subpoena into the company's procurement function; and (iii) plans for a smaller dividend than Kraft Heinz had paid in the past. FAC ¶¶ 2-4, 71-74. Plaintiffs allege that Defendants knew or should have known prior to February 21 that Kraft Heinz would have to make these disclosures and that its stock price would decline when it did so. FAC ¶¶ 76-77. According to Plaintiffs, before the disclosures, the price of Kraft Heinz stock was "artificially inflated," in that the price was higher than it would have been if the information disclosed on February 21 had been previously disclosed and incorporated into the stock price. FAC ¶ 82.

In their two-count First Amended Complaint, Plaintiffs claim that Defendants breached fiduciary duties imposed by ERISA. FAC ¶¶ 114-28. In Count I, Plaintiffs assert that the EBAB Defendants breached fiduciary duties imposed by ERISA in their management of the Plan. FAC ¶¶ 114-21. Plaintiffs claim that "Defendants had the power to cause corrective public disclosures to be made through the Company's SEC filings that would have corrected the stock's artificially inflated price and ensured that Kraft Heinz stock was a prudent investment," and that they breached fiduciary duties imposed by ERISA by failing to do so. FAC ¶ 89; *see* FAC ¶¶ 90-103.

In Count II, Plaintiffs claim that the Executive Defendants breached a fiduciary duty to monitor the EBAB and its members by failing to remove the EBAB's members who were allegedly "allowing Plan participants to be harmed by the continued investment of their retirement funds in" Kraft Heinz stock. FAC ¶ 127.

Plaintiffs originally filed this case in the U.S. District Court for the Western District of Pennsylvania. *See* Dkt. 61. It was transferred to this Court on April 9, 2020. *See* Dkt. 62.

**ARGUMENT**

Dismissal is warranted under Rule 12(b)(6) unless the complaint pleads facts sufficient to state a claim that is facially plausible, meaning "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "'[N]aked assertion[s]' devoid of 'further factual enhancement'" should likewise be disregarded. *Id.* (quoting *Twombly*, 550 U.S. at 557); *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013) (The Court "need not accept as true statements of law or unsupported conclusory factual allegations."). Dismissal is also warranted "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief" because of a deficiency in the plaintiff's legal theory. *Twombly*, 550 U.S. at 558 (citations omitted).

**I.      Count I Fails to State a Claim for Breach of Fiduciary Duty under ERISA against the EBAB Defendants.**

An ERISA fiduciary must "discharge his duties with respect to a plan solely in the interest of the [plan's] participants and beneficiaries," and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1). Plaintiffs allege that the EBAB Defendants, based on their position as alleged corporate insiders, knew or should have known of the negative financial information that Kraft Heinz ultimately revealed in February 2019 prior to its public disclosure, and that they breached their ERISA duties of prudence and loyalty by failing

7

to cause this same negative information to be disclosed earlier in order to "correct[] the stock's artificially inflated price." FAC ¶ 89. Plaintiffs are mistaken.

In *Dudenhoeffer*, the Supreme Court directed the lower courts to "fully" consider "one important mechanism for weeding out meritless" ESOP stock drop cases: "the motion to dismiss for failure to state a claim." 573 U.S. at 425. The Supreme Court instructed: to "divide the plausible sheep from the meritless goats" at the pleading stage, lower courts should conduct a "careful, context-sensitive scrutiny of a complaint's allegations." *Id.* The Court went on to prescribe a high pleading bar for plaintiffs bringing claims based on an alleged failure to act on inside corporate information:

> To state a claim for breach of the duty of prudence on the basis of inside information, a plaintiff must plausibly allege an alternative action that the defendant could have taken that would have been consistent with the securities laws and that a prudent fiduciary in the same circumstances would not have viewed as more likely to harm the fund than to help it.

*Id.* at 428.

Plaintiffs' fiduciary breach claim against the EBAB Defendants does not meet that high standard and should be dismissed for each of the following independent reasons. *First*, Plaintiffs do not plausibly allege that a prudent fiduciary could not have concluded that earlier disclosure of the alleged inside information would do more harm than good. *Second*, Plaintiffs do not plausibly allege that the EBAB Defendants possessed the alleged inside information at issue before it was disclosed in February 2019. *Third*, the ERISA-based disclosure duty that Plaintiffs advocate is inconsistent with the federal securities disclosure laws and the objectives of those laws—as the SEC has recently explained. *Finally*, Plaintiffs' theory that Defendants should have caused Kraft Heinz to publicly disclose any alleged inside information is inconsistent with extensive case law holding that ERISA regulates fiduciaries only when they act in their fiduciary capacity with respect to a plan, and not when they act as a corporate executive.

**A.** **Plaintiffs have failed to plausibly allege that a prudent fiduciary in the EBAB Defendants' position could not have concluded that earlier disclosure would do more harm than good.**

To state a claim under *Dudenhoeffer*, Plaintiffs must propose an "alternative [course of] action" that is consistent with the federal securities laws and "'plausibly allege[]' that a prudent fiduciary in the same position 'could not have concluded' that the alternative action 'would do more harm than good.'" *Amgen*, 136 S. Ct. at 760 (quoting *Dudenhoeffer*, 573 U.S. at 429–30). Plaintiffs' pleading burden is "significant," in that the alternative course of action must be "so clearly beneficial that a prudent fiduciary *could not conclude* that it would be more likely to harm the fund than to help it." *Whitley*, 838 F.3d at 529 (emphasis in original). Plaintiffs here propose a single alternative course of action: that the EBAB Defendants should have caused the information that was disclosed on February 2019 to be disclosed earlier (although they do not say when). FAC ¶ 89. While they acknowledge that such earlier disclosure would have resulted in a significant decline in the market price of Kraft Heinz stock, they assert that such harm will always be outweighed by the harm resulting from a delayed disclosure. Plaintiffs have not satisfied their burden.

Plaintiffs' conclusory allegation that the earlier disclosure of negative information will always be less harmful than later disclosure has been rejected by every court to consider it, with one exception that is inapplicable here: the Second Circuit's opinion in *Jander v. Retirement Plans Committee of IBM*, 910 F.3d 620 (2d Cir. 2018). That opinion was vacated by a unanimous Supreme Court earlier this year. *See Jander*, 140 S. Ct. 592.[2] And that case is readily distinguished from this case, because the Second Circuit relied on a host of factual allegations not present here.

---

[2] On June 22, 2020, following supplemental briefing on remand from the Supreme Court, the Second Circuit reinstated its original judgment pursuant to its original opinion, finding that the defendants-appellees had forfeited certain arguments that were made before the Supreme Court and declining to consider those arguments. *See Jander v. Ret. Plans Comm. of IBM*, No. 17-3518, 2020 WL 3412115 (2d Cir. June 22, 2020).

In *Jander*, the Second Circuit principally relied on what it took to be well-pleaded allegations that the disclosure of a known impairment of IBM's microelectronics unit was, in fact, inevitable, because the plaintiffs alleged that: (a) the impairment should have been recognized earlier under generally accepted accounting principles; (b) IBM was likely to sell the business unit and thus to disclose the impairment in connection with the sale; and (c) a likely sale was imminent and that third parties were, in fact, performing financial due diligence on the value of the microelectronics unit. *See* 910 F.3d at 628-30. No such facts have been alleged here. The Second Circuit has itself distinguished *Jander* and affirmed dismissal in a case where the plaintiffs had failed to plausibly allege that the disclosure was inevitable. *See O'Day v. Chatila*, 774 F. App'x 708, 711 (2d Cir. 2019).

Plaintiffs offer no well-pleaded allegations to support their theory on the particular facts of this case. Rather, they rely on conclusory assertions about general economic principles. *See* FAC ¶ 91. Such bare allegations of "generalized economic and reputational fallout" without "particularized facts in support of why earlier disclosure would have lessened the impact on the ERISA stock is a death-knell to this particular theory." *Perrone v. Johnson & Johnson*, No. 19-00923 (FLW), 2020 WL 2060324, at *19 (D.N.J. April 29, 2020) ("[C]ourts have routinely rejected similar arguments" as "too conclusory to satisfy *Dudenhoeffer*'s standard." (citing *In re Allergan ERISA Litig.*, No. 17-1554, 2018 WL 8415676, at *5 (D.N.J. July 2, 2018) (collecting cases)).[3] *See also, e.g., Martone v. Robb,* 902 F.3d 519, 526-27 (5th Cir. 2018) (rejecting as "too

---

[3] *See also In re Target Corp. Sec. Litig.*, 275 F. Supp. 3d 1063, 1087 (D. Minn. 2017) ("Plaintiffs may not simply allege that because a stock price drop was inevitable, *ipso facto* almost any legal alternative action aimed at softening losses to participants would do more good than harm."); *In re JPMorgan Chase & Co. ERISA Litig.*, No. 12-4027, 2016 WL 110521, at *4 (S.D.N.Y. Jan. 8, 2016) (explaining that "[t]hese assertions are not particular to the facts of this case and could be made by plaintiffs in any case asserting a breach of ERISA's duty of prudence"), *aff'd sub nom. Loeza v. John Does 1-10*, 659 F. App'x 44 (2d Cir. 2016); *Wilson v. Edison Int'l, Inc.*, 315 F. Supp. 3d 1177, 1193 (C.D. Cal. 2018) (providing samples of generic allegations in complaint that could apply to any similar claim); *Graham v. Fearon*, No. 16-2366, 2017 WL 1113358, at *6 (N.D. Ohio Mar. 24, 2017) (explaining plaintiff's claims

generic" plaintiff's assertion that "the longer a fraud of a public company like Whole Foods persists, the harsher the correction is likely to be when that fraud is finally revealed," and noting that "Martone's counsel"—who also represents Plaintiffs here—"has made essentially the same argument for early disclosure in ERISA actions against other companies in other jurisdictions"); *Saumer v. Cliffs Nat. Res. Inc.*, 853 F.3d 855, 864 (6th Cir. 2017) (rejecting complaint for failing to plausibly allege that a prudent fiduciary could not have concluded that disclosure would do more harm than good); *Whitley*, 838 F.3d at 529 (same); *Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 67-68 (2d Cir. 2016) (affirming dismissal based on failure to explain in non-conclusory fashion how an investigation would have uncovered inside information).

Plaintiffs' theory is also contrary to *Dudenhoeffer*'s clear directive that courts must consider the impact of an earlier disclosure on a plan's pre-existing holdings of company stock in applying the "more harm than good" standard. As the Supreme Court explained:

> [L]ower courts faced with such claims should also consider whether the complaint has plausibly alleged that a prudent fiduciary in the defendant's position could not have concluded that … publicly disclosing negative information would do more harm than good to the fund *by causing a drop in the stock price and a concomitant drop in the value of the stock already held by the fund*.

573 U.S. at 429–30 (citations omitted) (emphasis added). Plaintiffs' proposed alternative course of action plainly would have subjected the Plan to this very harm, as Plaintiffs themselves concede. *E.g.*, FAC ¶ 89 (alleging that disclosure "would have corrected the stock's artificially inflated price"). The price drop would have reduced the value of the Plan's significant existing holdings of Kraft Heinz stock, thereby harming the Plan, the participants whose accounts held the stock, and any participant who sold Kraft Heinz stock between the unspecified date when Plaintiffs believe the disclosure should have occurred and the date when it in fact occurred.

---

had failed to meet *Dudenhoeffer's* requirement of "more than assumptions and speculation to show that a proposed alternative meets both prongs of the test"), *aff'd*, 721 F. App'x 429 (6th Cir. 2018).

Given Plaintiffs' acknowledgement that any purported corrective disclosures would have caused a drop in value, regardless of the timing, the claim cannot satisfy *Dudenhoeffer*. *See Perrone*, 2020 WL 2060324, at *19 (explaining that a drop in value, without more, fails *Dudenhoeffer*). *See also, e.g.*, *Whitley*, 838 F.3d at 529 (where a plaintiff's proposed action "would likely lower the stock price[,] … a prudent fiduciary could very easily conclude that such actions *would* do more harm than good") (emphasis in original); *Graham*, 721 F. App'x at 436 ("Plaintiffs' argument does not account for the risk of market overreaction to such a disclosure, resulting in a decline worse than actually warranted. Nor does Plaintiffs' proposal factor in the potential harm to ESOP participants planning to sell their [] stock during the class period."). In other words, precisely because a prudent fiduciary *could* conclude that actively attempting to collapse the value of an asset in which the plan is heavily invested would do more harm than good, Plaintiffs' allegations fail the *Dudenhoeffer* standard.

Moreover, Plaintiffs have not plausibly alleged *any* facts ruling out the possibility that intervening events might have softened the blow from the supposedly inevitable disclosure, or even removed the need to make the disclosure at all. *See Iqbal*, 556 U.S. at 678 (courts should disregard "'naked assertion[s]' devoid of 'further factual enhancement'" (quoting *Twombly*, 550 U.S. at 557)).[4] In either case, a prudent fiduciary could well have concluded that earlier disclosure would hurt the plan more than it would help it. And prudent fiduciaries are well aware that new developments often dilute, cancel out, or counterbalance what had seemed to be purely bad news. For this reason, too, "a prudent fiduciary could conclude" that "disclos[ing] inside information to

---

[4] By contrast, in *Jander*, the Second Circuit relied heavily on its conclusion that the complaint there adequately pleaded that the disclosure was indeed inevitable "because IBM was likely to sell the [microelectronics] business and would be unable to hide its overvaluation from the public at that point." *See* 910 F.3d at 630. The Second Circuit noted that "[t]his allegation is particularly important." *Id.* And it later affirmed dismissal of an ERISA complaint that failed to plausibly allege that the disclosure was indeed inevitable. *See O'Day*, 774 F. App'x at 711.

the market to deflate the stock price … would have done more to harm the Plan than to help it." *Singh v. RadioShack Corp.*, 882 F.3d 137, 148-49 (5th Cir. 2018); *see Graham*, 721 F. App'x at 437 ("Although earlier disclosure may have ameliorated some harm to the Fund, that course of action was not so clearly beneficial that a prudent fiduciary could not conclude that it would be more likely to harm the fund than to help it."); *Loeza v. John Does 1-10*, 659 F. App'x at 46 (affirming dismissal of ERISA fiduciary duty claim filed by counsel for Plaintiffs here with similar allegations as "wholly conclusory" and insufficient under *Dudenhoeffer*); *Saumer*, 853 F.3d at 864 (rejecting claim under *Dudenhoeffer* because the "fiduciaries could have concluded that divulging inside information … would have collapsed Cliffs's stock price, hurting participants already invested in the ESOP"). Just as in every other case to consider similar allegations of delayed disclosure, Plaintiffs have not carried their burden of "proposing an alternative course of action so clearly beneficial that a prudent fiduciary *could not conclude* that it would be more likely to harm the fund than to help it." *Whitley*, 838 F.3d at 529 (emphasis in original).

### B. Plaintiffs have also failed to plausibly allege that Defendants actually possessed the alleged inside information prior to the February 2019 disclosure.

Plaintiffs' assertion that Defendants should have disclosed the information earlier than February 2019 rests entirely on Plaintiffs' speculation that the EBAB Defendants knew that information earlier. *See, e.g.*, FAC ¶ 82. For example, Plaintiffs speculate that certain "members of the EBAB were … well-positioned to know that Kraft Heinz stock was materially overvalued" because they held marketing, finance, or accounting roles. FAC ¶ 84; *see* FAC ¶¶ 84-86. Yet Plaintiffs do not allege what information the EBAB and its members knew prior to the February 2019 disclosure, when or how they learned such information, or when they supposedly should have disclosed that information. Indeed, Plaintiffs effectively concede that the company's financial disclosures satisfied GAAP, making it particularly implausible that a reasonable fiduciary

13

would question them.  FAC ¶ 99.  Having failed to provide the "further factual enhancement" required by *Iqbal* and *Twombly*, the Complaint consists solely of "mere conclusory statements" and "naked assertion[s]," which "do not suffice."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Courts have routinely rejected such conclusory allegations as insufficient under *Dudenhoeffer*. *See In re Lehman Bros. Sec. & ERISA Litig.*, 113 F. Supp. 3d 745, 762 (S.D.N.Y. 2015) ("[P]laintiffs must be able to allege with specificity how a hypothetical investigation would have elucidated risks allegedly known only to corporate insiders or otherwise would have alleviated the purported harm to ESOP beneficiaries caused by the alleged breach"), *aff'd sub nom. Rinehart*, 817 F.3d at 67 ("[T]he TCAC nowhere explains in a non-conclusory fashion *how* plaintiffs' hypothetical investigation would have uncovered the alleged inside information"); *see also* Order at *11-12, *Houssain*, No. 15-08184 (dismissing claim that defendants had inside knowledge of ongoing business negotiations where plaintiffs' "supporting factual allegations are nearly non-existent").

Plaintiffs have failed to plausibly allege that the EBAB Defendants possessed the inside information ultimately disclosed in February 2019 as of May 4, 2017, the start date of the putative class period.  *See, e.g.*, FAC ¶ 82 (conclusory assertion that Defendants knew "[t]hroughout the Class Period").  Plaintiffs apparently picked that date because it coincides with the date on which Kraft Heinz filed its Form 10-Q for the quarter ended April 1, 2017.  FAC ¶ 53  But they fail to tie that date to their allegations of the EBAB Defendants' supposed fiduciary breach or knowledge of negative financial information.  In short, they offer no allegations plausibly showing either that the EBAB Defendants possessed the information at issue on that date or that the EBAB Defendants were obliged to disclose it then.

The Federal Rules of Civil Procedure "do[] not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. In the absence of plausible allegations on these points, Plaintiffs have failed to state a claim for breach of fiduciary duty.

**C.    Plaintiffs' claim that ERISA required the EBAB Defendants to make disclosures that were not required by the securities laws conflicts with the objectives of those laws.**

Count I separately fails because Plaintiffs seek to derive a duty to disclose nonpublic corporate information from ERISA, but ERISA does not modify, supplant, or supersede the complex disclosure regime established by the federal securities laws and regulated by the SEC.

Plaintiffs' theory is that ERISA required the EBAB Defendants to "cause corrective public disclosures to be made through the Company's SEC filings" earlier than February 2019. FAC ¶ 89. Yet Plaintiffs do not allege any facts showing that *the federal securities laws* required an earlier disclosure. *See* FAC ¶ 101 (asserting, in conclusory fashion, only that "the issuance of a corrective disclosure was *arguably* required by the federal securities laws" (emphasis added)); *id.* ¶ 102 ("even if Defendants determined that disclosure was not required by the securities laws, disclosure was certainly not prohibited by them"). Plaintiffs' claim rests on the shaky foundation that ERISA can require fiduciaries to cause disclosures of material nonpublic information about public companies even where the federal securities laws do not require disclosure. Plaintiffs are wrong as a matter of law.

In *Dudenhoeffer*, the Supreme Court instructed that "courts should consider the extent to which an ERISA-based obligation … to disclose inside information to the public could conflict with the complex insider trading and corporate disclosure requirements imposed by the federal securities laws or with the objectives of those laws." 573 U.S. at 429 (citations omitted). The

Court added that "[t]he U.S. Securities and Exchange Commission has not advised us of its views on these matters, and we believe those views may well be relevant." *Id.*[5]

Over five years after *Dudenhoeffer*, the SEC had the opportunity to provide the Supreme Court with an official statement of its views on this matter: "In the view of the SEC and the United States, it would generally be inconsistent with the objectives of the securities laws to impose an ERISA-based duty to publicly disclose inside information in the absence of a securities-laws duty." U.S. Br. 18, *Ret. Plans Comm. of IBM v. Jander*, No. 18-1165, 2019 WL 3824687 (U.S. Aug. 13, 2019) ("U.S. *Jander* Br.").[6] The Department of Labor, which has principal administrative authority over ERISA, "concurs in the conclusion that ERISA does not impose a duty to disclose in those circumstances." *Id.* The brief filed by the SEC, the Solicitor General, and the Department of Labor in the *Jander* case explains that "[t]he federal securities laws already impose a comprehensive disclosure regime governing when, how, and by whom such disclosures must be made when the stock is publicly traded." *Id.* at 13. This "comprehensive scheme of public disclosure rules [is] designed to protect investors." *Id.* at 11; *see also Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 315 (1985). Accordingly, "[t]here is no sound reason to adopt a different set of disclosure rules to protect those investors who are participants in an ESOP."

---

[5] Even before *Dudenhoeffer*, the Seventh Circuit held that "violation of ERISA's disclosure requirement … requires evidence of either an intentionally misleading statement, or a material omission where the fiduciary's silence can be construed as misleading." *Howell v. Motorola, Inc.*, 633 F.3d 552, 571 (7th Cir. 2011); *see also id.* ("To the extent that [the plaintiffs] argue that the defendants negligently misrepresented information … in their SEC filings, that negligence would not be enough to show a violation of ERISA's disclosure duty. … [T]his court has required some deliberate misstatement before it finds a violation of the ERISA duty to disclose material information."). Plaintiffs offer no allegations that could satisfy that standard.

[6] The SEC recently filed the same brief with the Second Circuit on remand from the Supreme Court. *See* Ltr. of SEC, *Jander v. Ret. Plans Comm. of IBM*, No. 17-3518 (2d Cir. June 1, 2020), ECF No. 116 (attaching brief filed on behalf of the United States in Supreme Court). The Second Circuit declined to consider the argument because the defendants there had failed to preserve it. *See Jander v. Ret. Plans Committee of IBM*, No. 17-3518, 2020 WL 3412115, at *1 (2d Cir. June 22, 2020). Here, by contrast, the argument is squarely presented.

U.S. *Jander* Br. 11. Thus, absent a separately mandated securities law disclosure, Plaintiffs' plea for earlier disclosure should be rejected.

The securities laws and regulations enacted by Congress and the SEC "do not create an affirmative duty to disclose any and all material information." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011); *see also Chiarella v. United States*, 445 U.S. 222, 235 (1980). "Except for specific periodic reporting requirements (primarily the requirements to file quarterly and annual reports), there is no general duty on the part of a company to provide the public with all material information. Thus, possession of material nonpublic information alone does not create a duty to disclose it." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1432 (3d Cir. 1997) (Alito, J.) (citations omitted). The securities laws recognize that companies often have valid reasons for maintaining the secrecy of inside information, and that the decision of whether to disclose such information should generally be left to market forces and private decisionmakers rather than courts and regulators.[7]

The Supreme Court and the SEC have made a deliberate judgment that persons who invest in publicly traded stocks, including through ERISA-governed plans, should be protected by these "complex insider trading and corporate disclosure requirements." *Dudenhoeffer*, 573 U.S. at 429. The SEC has cautioned that the imposition of an ERISA-based duty to disclose would conflict with these objectives. *See Jander*, 140 S. Ct. at 595-96. "There is no sound reason to adopt a different set of disclosure rules to protect those investors who also happen to be investors through an ESOP, or the ESOP itself." U.S. *Jander* Br. 22.

---

[7] *See, e.g.*, *Flamm v. Eberstadt*, 814 F.2d 1169, 1177 (7th Cir. 1987) ("[S]ilence pending settlement of the price and structure of a [merger] deal is beneficial to most investors, most of the time"); *SEC v. Materia*, 745 F.2d 197, 199 (2d Cir. 1984) ("Because even a hint of an upcoming tender offer may send the price of the target company's stock soaring, information regarding the identity of a target is extremely sensitive and zealously guarded.").

As the Supreme Court suggested in *Dudenhoeffer*, courts should heed the SEC's views on this matter and refrain from interpreting ERISA to impose corporate disclosure requirements that modify, supplant, or supersede "the careful plan that Congress has enacted for regulation of the securities markets." *Chiarella*, 445 U.S. at 235. Because Plaintiffs do not assert (much less plausibly allege) that the securities laws imposed a duty to disclose the information at issue here earlier than it was in fact disclosed, their fiduciary duty claim fails as a matter of law.

Plaintiffs' claim that the EBAB Defendants should have made earlier disclosures fails for an additional reason: the EBAB Defendants that Plaintiffs accuse of violating their fiduciary duties by failing to cause the disclosure of information earlier had no direct authority to cause Kraft Heinz to make SEC disclosures. FAC ¶ 120 (distinguishing EBAB Defendants from "personnel with disclosure responsibilities"). Thus, even if ERISA could be read to impose disclosure duties on fiduciaries who, in their corporate capacity, had such securities law obligations, no claim could be asserted against the EBAB Defendants because they had no such duties.

Apparently recognizing that the EBAB Defendants had no separate securities law disclosure obligations, Plaintiffs assert that "Defendants who were members of the EBAB should have tried to cause to be disclosed, through the appropriate personnel, truthful or corrective disclosures." FAC ¶ 43. But this assertion falls short of a plausible factual allegation that the EBAB Defendants' action (or alleged inaction) resulted in any actionable harm to the Plaintiffs. Indeed, Plaintiffs' suggestion that such entreaties would have resulted in an earlier disclosure is nothing more than rank speculation and cannot satisfy *Iqbal's* requirements. *See Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 465 (7th Cir. 2005) ("To state a claim for breach of fiduciary duty under ERISA, the plaintiff must establish … that the breach caused harm to the plaintiff.") (citation omitted). The claim against the EBAB Defendants should therefore be dismissed.

18

### D. Plaintiffs' claim also fails because ERISA's fiduciary duties apply only when a fiduciary acts in his fiduciary capacity, not when he acts in his corporate capacity.

ERISA recognizes that plan fiduciaries may also serve in other roles, and it regulates them only when they act in their capacity as fiduciaries with respect to the plan. *See, e.g.*, *Howell*, 633 F.3d at 562 ("Courts have been careful to respect the distinction between the capacity of fiduciary or plan administrator, on the one hand, and employer or plan author on the other."). As many courts have held, ERISA does *not* regulate fiduciaries' conduct in their capacity as corporate officers rather than ERISA fiduciaries, such as when they make public disclosures of corporate information. Because the EBAB Defendants do not act as fiduciaries when they participate in corporate decision-making about disclosures of company information, Plaintiffs' ERISA claim fails on this independent ground.[8]

ERISA provides that "a 'person is a fiduciary with respect to a plan,' and therefore subject to ERISA fiduciary duties, [only] 'to the extent' that he or she 'exercises any discretionary authority or discretionary control respecting management' of the plan, or 'has any discretionary authority or discretionary responsibility in the administration' of the plan." *Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996) (quoting ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A)); *see also Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 917 (7th Cir. 2013); *Howell*, 633 F.3d at 555. "'[U]nder this definition, a person may be an ERISA fiduciary with respect to certain matters but not others'; fiduciary status exists only 'to the extent' that the person 'has or exercises the described authority or responsibility' over a plan." *Coulter v. Morgan Stanley & Co., Inc.*, 753 F.3d 361, 366 (2d Cir. 2014) (quoting *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.3d 1250, 1259 (2d Cir. 1987)).

---

[8] The Second Circuit also declined to consider this argument in *Jander* because the defendants there had failed to preserve it. *See Jander*, 2020 WL 3412115, at *1. There is no such impediment here.

Thus, "ERISA recognizes that a party might be acting in a fiduciary capacity at some points and in an ordinary capacity at other points." *Priddy v. Health Care Serv. Corp.*, 870 F.3d 657, 661 (7th Cir. 2017). As the Supreme Court has put it, "the trustee under ERISA may wear different hats," such as plan fiduciary and corporate executive. *Pegram*, 530 U.S. at 225. "In every case charging breach of ERISA fiduciary duty, then, the threshold question is … whether [the alleged fiduciary] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Id.* at 226.[9] If not, then the plaintiff's "ERISA count fails to state an ERISA claim" and must be dismissed. *Id.* at 237.

Here, Plaintiffs' theory is that "Defendants had the power to cause corrective public disclosures to be made through the Company's SEC filings that would have corrected the stock's artificially inflated price," and that they breached their fiduciary duties under ERISA by failing to do so. FAC ¶ 89; *see also, e.g.*, *id.* ¶¶ 87, 91, 99. But that theory does not satisfy the "threshold question" in this case because the EBAB Defendants were not acting as ERISA fiduciaries when they allegedly failed to "cause corrective public disclosures to be made through the Company's SEC filings." *Pegram*, 530 U.S. at 226; FAC ¶ 89. Per Plaintiffs, the EBAB Defendants allegedly "had the power to cause corrective public disclosures," not because they wore the hats of ERISA fiduciaries, but because they also wore the hats of corporate officers. Since public disclosures of company information are corporate matters that the EBAB Defendants would have addressed in their corporate capacity, *Pegram* and its progeny make clear that ERISA did not require

---

[9] Consistent with *Pegram*, *Dudenhoeffer* holds that insider fiduciaries are subject to the "same duty of prudence that applies to ERISA fiduciaries in general"—not a higher duty requiring them to take actions that may be available to them only because they also happen to wear corporate officer hats. 573 U.S. at 412 (citation omitted); *see also id.* at 419 (ERISA's "prudent person" standard applies to "fiduciaries' investment decisions and disposition of [plan] assets," rather than, for instance, corporate disclosure decisions) (internal quotations & citation omitted); *Perrone*, 2020 WL 2060324, at *15 ("[T]here is no indication in *Dudenhoeffer* that the Supreme Court's imposition of the alternative action standard was intended to erode the pre-existing case law recognizing that corporate insiders, who are also fiduciaries of an ERISA plan, play a dual role, and should not be subject to ERISA liability for actions taken solely in their corporate capacity.").

Defendants to cause such disclosures to be made.  Accordingly, they did not breach any duty imposed by ERISA when they allegedly failed to do so.

Consistent with *Pegram*, many "[c]ourts have dismissed ERISA claims alleging breaches of fiduciary duty to disclose in the employer stock context where the challenged statements consisted of SEC filings and statements made to the market."  *In re SLM Corp. ERISA Litig.*, No. 08-4334, 2010 WL 3910566, at *9 (S.D.N.Y. Sept. 24, 2010 2010) (quoting *Gearren v. McGraw-Hill Cos., Inc.*, 690 F. Supp. 2d 254, 272 (S.D.N.Y. 2010), *aff'd sub nom. Slaymon v. SLM Corp.*, 506 F. App'x 61 (2d Cir. 2012).[10]  In short, "ERISA does not create an obligation to disclose information about an investment option that the public itself does not know when the fiduciaries have made no false or misleading statement to the beneficiaries."  *Lingis*, 649 F. Supp. 2d at 876 (citation omitted); *see also Jander*, 140 S. Ct. at 596 (Gorsuch, J., concurring) ("Because ERISA fiduciaries are liable only for actions taken while 'acting as a fiduciary,' it would be odd to hold [ERISA] fiduciaries liable for 'alternative action[s they] could have taken' *only* in some other capacity") (emphasis in original).

A federal court recently applied these principles to the *Dudenhoeffer* framework in dismissing a claim materially identical to the one at issue here.  In *Perrone*, a putative class of ESOP participants brought an ERISA lawsuit, claiming that the plan fiduciaries (who were also senior company executives) possessed negative inside information about the company that made

_____

[10] *See, e.g.*, *Gearren*, 660 F.3d at 611 ("[D]efendants who signed or prepared [their company's] SEC filings were acting in a corporate, rather than ERISA fiduciary, capacity when they did so."); *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 257 (5th Cir. 2008) (defendants were not "acting in anything other than a corporate capacity" when preparing SEC disclosures) (citation omitted); *Rogers v. Baxter Int'l Inc.*, 710 F. Supp. 2d 722, 737 (N.D. Ill. 2010) ("a person who makes a public statement, such as in a securities filing, does not make that statement in a fiduciary capacity," so the plaintiff's "argument that defendants misled 'the market' concerns non-fiduciary communications") (citations omitted); *Lingis v. Motorola, Inc.*, 649 F. Supp. 2d 861, 874-75 (N.D. Ill 2009) ("[T]he allegedly negligent statements made in the SEC filings were not made in Defendants' capacity as ERISA fiduciaries. … [T]hey did so in their corporate capacities rather than in their fiduciary capacities."), *aff'd sub nom. Howell v. Motorola, Inc.*, 633 F.3d 552 (7th Cir. 2011).

its "stock price … artificially inflated." 2020 WL 2060324, at *1. They asserted that the defendants "breached their fiduciary duties" because they "could, and should, have … ma[de] corrective disclosure" of that inside information to the market. *Id.* at *11. The court rejected that argument, holding that "issuing SEC filings, the mechanism through which Plaintiffs allege Defendants should have made their disclosures, are conducted in a corporate capacity, not a fiduciary one, and thus cannot constitute an adequate alternate course of action under *Dudenhoeffer*." *Id.* at *14; *see also id.* at *14-17. *See also In re Lehman Bros. Sec. & ERISA Litig.*, 113 F. Supp. 3d at 767–68 (post-*Dudenhoeffer* decision finding that a rule requiring appointing fiduciaries to share nonpublic information with other fiduciaries would create "ceaseless conflict" between corporate officers and fiduciaries).

As in *Perrone*, because Plaintiffs have not identified any alternative action that the EBAB Defendants could have taken *in their capacity as fiduciaries*, Plaintiffs' claim for breach of ERISA fiduciary duties fails.

## II. Plaintiffs have failed to state a claim for breach of the duty to monitor (Count II).

Count II claims that the Executive Defendants breached their duty to monitor the EBAB and its members. FAC ¶¶ 122-28. Plaintiffs do *not* claim that these Defendants had a fiduciary duty under ERISA to disclose the information at issue here themselves, only that they breached their duty to monitor the EBAB and its members by failing to detect and address the supposed fiduciary breach alleged in Count I. *See id.* Count II fails for three independent reasons.

*First*, as addressed above, Plaintiffs have failed to adequately plead any underlying violation of ERISA. Their derivative claim for failure to monitor must therefore be dismissed because "Plaintiffs cannot maintain a claim for breach of the duty to monitor . . . absent an

underlying breach of the duties imposed under ERISA." *Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 68 (2d Cir. 2016) (quoting *Rinehart v. Akers*, 722 F.3d 137, 154 (2d Cir. 2013)).[11]

*Second*, even if Plaintiffs had adequately pleaded an underlying claim, their failure-to-monitor claim would still fail. "The duty of an ERISA fiduciary to review the performance of its appointees is a limited one. Specifically, a fiduciary must review the performance of its appointees at reasonable intervals in such a matter as may be reasonably expected to ensure compliance with the terms of the plan and statutory standards." *In re Calpine Corp. ERISA Litig.*, No. 03-1685, 2005 WL 1431506, at *6 (N.D. Cal. Mar. 31, 2005) (citation omitted). Here, Plaintiffs provide only a handful of conclusory allegations, none of which establishes that the Executive Defendants failed to meet this standard. FAC ¶¶ 27-29, 83, 123-25, 127. Such legal conclusions are inadequate under *Iqbal*. *See Calpine*, 2005 WL 1431506, at *6 ("Plaintiff has not alleged any facts that support his claim that . . . Defendants failed to periodically review the performance of the Committee members.").

*Third*, and finally, Plaintiffs have not alleged that the Executive Defendants had an ERISA fiduciary duty to make any corrective disclosures, nor could they encourage the EBAB Defendants to do so, as none of the EBAB Defendants is alleged to have authority to make such disclosures.

For all of these reasons, Count II should be dismissed.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the First Amended Complaint with prejudice.

---

[11] *See also*, *e.g.*, *Catalfamo v. Sears Holding Corp.*, No. 17-5230, 2018 WL 10560956, at *5 (N.D. Ill. Aug. 21, 2018) (following *Rinehart*); *White v. Marshall & Ilsley Corp.*, No. 10-311, 2011 WL 2471736, at *12 (E.D. Wis. June 21, 2011) ("[T]he court is compelled to dismiss" the monitoring claim because it is "predicated on the existence of underlying breaches of fiduciary duty that are meritless."), *aff'd*, 714 F.3d 980 (7th Cir. 2013).

Dated: July 2, 2020

Respectfully submitted,

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

/s/ *Daniel J. Kramer*

Daniel J. Kramer (pro hac vice)
Andrew J. Ehrlich (pro hac vice)
William A. Clareman (pro hac vice)
1285 Avenue of the Americas
New York, NY 10019-6064
Phone: (212) 373-3000
Fax: (212) 757-3990
dkramer@paulweiss.com
aehrlich@paulweiss.com
wclareman@paulweiss.com

Matthew D. Stachel (pro hac vice)
500 Delaware Avenue, Suite 200
Post Office Box 32
Wilmington, DE 19899-0032
(302) 655-4410
mstachel@paulweiss.com

**JENNER & BLOCK LLP**

Dean N. Panos (Il. ARDC # 6203600)
Howard S. Suskin (Il. ARDC # 6185999)
Gabriel K. Gillett (Il. ARDC # 6328233)
353 N. Clark Street
Chicago, IL 60654-3456
Phone: (312) 222-9350
Fax: (312) 527-0484
dpanos@jenner.com
hsuskin@jenner.com
ggillett@jenner.com

*Counsel for Defendants*

**STEPTOE & JOHNSON LLP**

Paul J. Ondrasik, Jr.
Sara R. Pikofsky
Mark Savignac
1330 Connecticut Ave., NW
Washington, DC 20036
Phone: (202) 429-3000
Fax: (202) 429-3902
pondrasik@steptoe.com
spikofsky@steptoe.com
msavignac@steptoe.com

*Of Counsel for Defendants*

25

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing *Defendants' Opening Brief in Support of Their Motion to Dismiss the First Amended Complaint* was filed on July 2, 2020 with the Clerk of the Court using the CM/ECF system, which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.

By: */s/ Daniel J. Kramer*
          Daniel J. Kramer